IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRITNEY SAVAGE, | CIVIL DIVISION |
| Plaintiff, | Case No.    23-452 |
| v. | |
| KUHN'S QUALITY FOODS, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Britney Savage brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination and harassment based upon her race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about December 19, 2022, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2023-00328. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated January 6, 2023.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.	**_The parties_**

6.	The plaintiff is an adult individual (African American) who resides in Penn Hills, Allegheny County, Pennsylvania.

7.	The defendant Kuhn's Quality Foods ("Kuhn's" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 700 Beulah Road, Turtle Creek, Allegheny County, Pennsylvania, 15146.

8.	The defendant is retail grocery store.

9.	At all times material, the defendant employed more than fifteen employees.

10.	The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.	**_Factual Background_**

11.	The plaintiff was employed by Kuhn's from January 3, 2022 through October 26, 2022.

12.	The plaintiff was employed as a deli associate. Her duties included preparing, cooking and serving deli foods.

13.	Paulette Nolf (Caucasian) was the plaintiff's manager. Mark [last name unknown] (Caucasian) was one of the store managers. Robert [last name unkown] (Caucasian) was one of the store managers. Dave [last name unknown] (Caucasian) was a store manager.

14.	The plaintiff performed all the functions of her job in a competent fashion and was considered a good worker with excellent "people skills" with customers. On several occasions, Dave and Robert told the plaintiff that customers would come up to them praising the plaintiff, commenting how nice, pleasant and hardworking she was.

15. While the plaintiff was employed by Kuhn's, she was treated differently in the terms and conditions of her employment than similarly situated Caucasian employees, subjected to comments related to her race and her work was subjected to heightened scrutiny. Some examples follow:

(a) Paulette regularly harassed the plaintiff while she was attempting to do her job. For example, on one occasion, Paulette queried the plaintiff regarding the whereabouts of another black employee (assuming that, since the plaintiff is black, she would know where all her black co-workers were throughout the day). The plaintiff told Paulette that she did not know where the co-worker was. Later, Paulette walked close by the plaintiff while she was operating sharp machinery, muttering "you threw me under the bus." While hovering over the plaintiff, she hummed loudly, in an attempt to distract the plaintiff.

(b) One day, the plaintiff was working both the front and the kitchen because the deli department was short an employee. The plaintiff went over her time trying to finish up the project she was working on. Paulette spoke to her rudely, saying "*you all* [meaning black employees] do whatever *you* want."

(c) One day, the plaintiff was having a humorous, pleasant conversation with a black co-employee. Paulette told them "you all are having such a nice time; you should go to the club," inferring that is where black folks typically hang out and do all their socializing.

(d) Mark often made belittling comments about the plaintiff's hair and regularly told to put a hair net on, even though she always did so. Similarly situated white employees were not subjected to scrutiny and comments about their hair. Further, similarly situated white employees often went without hair nets or did not put them on correctly resulting in their hair hanging out while they worked in the deli or other similar areas and they were not disciplined or otherwise scolded about the issue.

(e) Paulette also made racially tinged snide comments about the plaintiff's hair. For example, one day the plaintiff came into work with her hair in an Afro puff. Afro puffs are a hair style usually consisting of one or two "puffs" of hair. Paulette made a point of stopping and gawking at the plaintiff and said, "I didn't know you had that *much* hair!"

(f) White employees often commented on the size of the plaintiff's behind, insinuating that black women typically have large behinds.

3

(g) Management tolerated infractions of Kuhn's policies when committed by white employees, but held the plaintiff (and other black co-workers) to a stricter standard. For example, a white employee was caught drinking alcohol out of a flask while working, but he was not terminated or disciplined. White employees often ate food right out of the deli cases and engaged in unsanitary practices, like "double dipping" items they were eating without being disciplined. Further, white employees often cursed, loudly at each other or at management and in the presence of customers, but they were not terminated or disciplined.

(h) Paulette did everything that she could to make sure that the plaintiff could not advance within the department or branch out into other job duties. She refused to allow the plaintiff to be trained on other job tasks or have more responsibility. Similarly situated white employees were not treated in this fashion. Other managers or employees would provide training and guidance to the plaintiff when Paulette was not around because they knew that Paulette would not permit it in her presence.

(i) The plaintiff was not permitted to make changes to the menu. Similarly situated white employees were permitted to do so.

(j) Paulette yelled at the plaintiff and picked on her relentlessly and, usually over very small things. For example, if Paulette noticed that the plaintiff handed a customer one too many mayonnaise packets with the order, she would give the plaintiff a lecture on how she was not supposed to do that.

(k) Paulette regularly accused the plaintiff and other black employees for "stepping on her toes" or "throwing her under the bus" when they questioned her decisions or made comments about how she and the others were treated. Further, when the plaintiff tried to explain her actions in response to another one of Paulette's accusations, she often replied in a dismissive, condescending fashion, "well, you always have something to say." Paulette did not act in this "territorial" or abusive way with similarly situated white employees.

16. The plaintiff, as well as other black co-workers, often complained to management about Paulette's disparate, unfair treatment. Management never took any of their complaints seriously and never investigated or disciplined Paulette. This lack of accountability emboldened Paulette to be more arbitrary and unfair regarding her treatment of the plaintiff and other black co-workers. A black employee told the plaintiff, "you better watch yourself around Paulette, she doesn't like us."

17. On October 25, 2022, Paulette intentionally ran over the plaintiff's foot with a cart that she was pushing.

18. During the day of October 26, 2022, Paulette seemed especially focused on making nit-picking and condescending statements to the plaintiff. The plaintiff confronted Paulette and told her to stop harassing her and if there were any issues, "we have to take it out front" and talk to Dave about it. Also, around that time, Mark stopped by the deli department to check about the commotion that was going on. Paulette seemed to calm down, so the plaintiff continued working.

19. Within minutes, Paulette started making harassing comments again.

20. The plaintiff could not take any more abuse so she decided to leave early for the day to remove herself from the situation. As she approached the front of the store, Mark asked her why she was leaving. She told him that he knew that Paulette was harassing her. She also brought up the incident involving the cart from the day before. At first, he did not take the complaint seriously and it seemed that he did not believe the plaintiff. She told him to pull the video tapes and see it for himself. He refused to do so. They went back and forth about the issue for a couple of minutes. All he did was to roll his eyes at the plaintiff and say, "well, she is the manager" implying that Paulette could do whatever she wanted.

21. The plaintiff got extremely upset by Mark's cavalier attitude and cursed in response, still objecting to the way she was being treated.

22. The plaintiff ended up calling the police. When the officer arrived, she gave a report about the harassment to which she had been subjected. After that, she went home for the day.

23. Later that evening, the plaintiff talked to Dave about the status. He said, "we're going to have to let you go because you cursed at Mark."

24. The plaintiff's employment was terminated, ostensibly for cursing while at the store. However, this was a pretext and the real reason for her termination was on account of her race. As stated above, similarly situated white employees engaged in the same type of infraction but were not terminated or disciplined as a result.

## FIRST CAUSE OF ACTION

25. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

26. The plaintiff is African American and thus is protected against harassment and discrimination, on the basis of her race pursuant to Title VII.

27. The plaintiff was qualified for her position.

28. Despite her qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

29. The defendant's discharge of the plaintiff was because of her race in violation of Title VII.

30. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

31. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

32. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from harassment and discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

                              Respectfully submitted,

                              */s/ Michael J. Bruzzese*
                              Michael J. Bruzzese
                              Pa. I.D. No. 63306
                              220 Koppers Building
                              436 Seventh Avenue
                              Pittsburgh, PA 15219
                              (412) 281-8676
                              Counsel for the plaintiff

Dated: March 16, 2023